**In the Matter of Frederick HAMPEL, d/b/a Buccaneer Vans and Sales, Debtor.**

**Randall L. EAVES, Plaintiff,**

**v.**

**Frederick HAMPEL, d/b/a Buccaneer Vans and Sales, Defendant.**

**Bankruptcy No. 89–30209.**
**Adv. No. 89–3026.**

United States Bankruptcy Court,
M.D. Georgia,
Athens Division.

Jan. 18, 1990.

89

Eugene W. Harper, Jr., Jeffery S. Malcom, Hartwell, Ga., for plaintiff.

Ernest V. Harris, Athens, Ga., for defendant.

## STATEMENT OF THE CASE

ROBERT F. HERSHNER, Jr., Chief Judge.

Frederick Hampel, d/b/a Buccaneer Vans & Sales, Debtor, Defendant, filed a petition under Chapter 7 of the Bankruptcy Code on March 31, 1989. Randall L. Eaves, Plaintiff, filed a complaint to determine the dischargeability of a debt on July 24, 1989. Plaintiff contends that a debt owed to him by Defendant is nondischargeable under section 523(a)(6) of the Bankruptcy Code.[1] Defendant filed his answer on August 18, 1989. A trial was held on November 14, 1989. The Court, having considered the evidence presented and the arguments of counsel, now publishes its findings of fact and conclusions of law.

## FINDINGS OF FACT

Defendant operated a business known as Buccaneer Vans and Sales. The business can generally be described as a van conversion business. Plaintiff was employed to make wood products that were used in the van conversions. In April 1986, Plaintiff cut three fingers off his left hand while using a saw at Defendant's business. At the time of the injury, Defendant did not have workers' compensation insurance.

Plaintiff filed an application for workers' compensation with the State Board of Workers' Compensation (the Board). After a hearing, an Administrative Law Judge for the Board found Defendant to be subject to the Workers' Compensation Act.[2] The Administrative Law Judge found that Defendant had refused and/or willfully neglected to comply with the Workers' Compensation Act by failing to obtain the required insurance or qualify as a self-insurer. The Administrative Law Judge also found that Defendant had, through subterfuge, attempted to evade his responsibilities under the workers' compensation law. By order dated October 27, 1986, the Administrative Law Judge awarded Plaintiff disability income benefits, medical expenses, and attorney fees.

The Board reviewed the Administrative Law Judge's order. By order dated April 16, 1987, the Board made the award of the Administrative Law Judge the award of the Board. The Superior Court of Hart County, Georgia, affirmed the Board's award on December 22, 1987. Defendant moved the Superior Court to reconsider its order. On March 15, 1988, the Superior Court reaffirmed its order of December 22, 1987.

Defendant filed an application for a discretionary appeal with the Court of Appeals of the State of Georgia. The state court of appeals denied Defendant's application for discretionary appeal on May 4, 1988. On May 23, 1988, the Superior Court of Hart County, Georgia, issued a writ of fieri facias in favor of Plaintiff and against Defendant in the amount of $20,725.75.

Plaintiff contends that he is entitled to an additional $30,536.51 in disability income benefits, medical expenses, and attorney fees which have accrued since the award by the State Board of Workers' Compensation. Simply stated, Plaintiff contends that Defendant owes him $51,262.26.

Defendant's business had a net loss of $18,419 in 1985 and a net loss of $32,185 in 1986. Defendant schedules his total debts as $49,649. He schedules his debt to Plaintiff as unsecured with a balance of $26,500. He schedules a debt to Plaintiff's attorney as unsecured with an unknown balance. Defendant schedules as unsecured several debts to entities which provided medical services to Plaintiff.

## CONCLUSIONS OF LAW

The issue before the Court is whether a debt based on a workers' compensation award is dischargeable when the debtor-employer failed to obtain workers' compensation insurance. Plaintiff argues that the debt is nondischargeable under section

---

**1.** 11 U.S.C.A. § 523(a)(6) (West 1979 & Supp. 1989).

**2.** *See* O.C.G.A. § 34–9–1 et seq. (1988 & Supp. 1989).

523(a)(6) of the Bankruptcy Code.[3] This section provides:

> (a) A discharge under section 727, 1141[,] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C.A. § 523(a)(6) (West 1979 & Supp. 1989). Simply stated, the issue is whether Plaintiff's claim arose from a willful and malicious injury by Defendant.

In order to except from discharge an individual's debt under section 523(a)(6), the party seeking the exception must prove the willfulness and maliciousness of the act from which the debt arose by clear and convincing evidence. Willful means intentional or deliberate and cannot be established merely by applying a recklessness standard. *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 989 (11th Cir.1989); *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1262–63 (11th Cir.1988).

Malicious means wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill will. Malice can be established by a finding of implied or constructive malice. Special malice, a specific intent to harm another, need not be proven. Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice. *In re Ikner*, 883 F.2d at 991.

An act of reckless disregard of the rights of others is insufficient to constitute willful and malicious conduct. *American Cast Iron Pipe Co. v. Wrenn (In re Wrenn)*, 791 F.2d 1542, 1544 (11th Cir. 1986).

Exceptions to dischargeability are to be construed strictly. *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986). The exceptions to discharge were not intended and must not be allowed to swallow the general rule favoring discharge. *Murphy & Robinson Investment Co. v. Cross (In re Cross)*, 666 F.2d 873, 880 (5th Cir. Unit B 1982).

The Court notes that the provisions of the workers' compensation law are the exclusive remedy against an employer which is available to an employee injured on the job.[4] In return for assured benefits without a showing of fault, the employee gives up the right to file a personal injury law suit with the possibility of receiving unlimited damages. In return for this protection from unlimited damages, the employer must accept limited liability without regard to fault. An employer subject to the law who fails to obtain insurance is not, however, immune from suit to collect benefits. *Samuel v. Baitcher*, 247 Ga. 71, 274 S.E.2d 327 (1981).

Defendant contends that he was not subject to the Workers' Compensation Act because he did not have three or more employees.[5] The Court has reviewed the record of the state proceedings and is persuaded that Defendant had ample opportunity to litigate this issue.[6] The Administrative Law Judge determined that Defendant was subject to the Act. This finding was upheld by the Board, the Superior Court of Hart County, and the Court of Appeals for the State of Georgia. This Court is bound to give collateral estoppel effect to that fact finding.[7]

---

**3.** 11 U.S.C.A. § 523(a)(6) (West 1979 & Supp. 1989).

**4.** O.C.G.A. § 34–9–11 (1988).

**5.** In general, every employer which has three or more full or part-time employees regularly in service in the same business is subject to the provisions of the workers' compensation law. O.C.G.A. § 34–9–2(a) (1988).

**6.** A bankruptcy court is precluded from retrying an issue allegedly litigated in a state court proceeding only if:

> (1) the issue at stake was identical to the one involved in the prior litigation;
> (2) the issue was actually litigated in the prior litigation; and
> (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that earlier action.
>
> *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 989 (11th Cir.1989).

**7.** The United States Supreme Court has addressed the applicability of collateral estoppel to decisions made in administrative hearings. *United States v. Utah Construction and Mining*

■ In *Aaron v. Cleghorn (In re Cleghorn)*,[8] this Court held that a claim based on an employer's failure to purchase workers' compensation insurance was dischargeable in bankruptcy. This Court stated:

Debtor testified that he knew of the duty to have workmen's compensation insurance but could not afford to pay the premiums. Aaron alleges that this willful failure to provide workmen's compensation insurance deprived him of his right to recover damages for his injury. However, there is no evidence that the act was willful and malicious. Debtor knew of the obligation but financially could not satisfy it. His failure would not necessarily result in an injury to Aaron; the failure to purchase workmen's compensation insurance only posed a *potential* for injury.... There is no evidence here to establish that Debtor failed to purchase workmen's compensation insurance with the intent of depriving any of his employees to their entitlement under the workmen's compensation statute in the event of injury.

The case at bar presents the Court with an opportunity to re-examine its position in *Cleghorn* in view of several recent decisions which have reached different conclusions.

Plaintiff does not contend that his physical injury was caused by a willful and malicious act of Defendant. Plaintiff contends that Defendant's decision not to purchase the required insurance was a willful and malicious act which injured his statutory right to workers' compensation benefits. Plaintiff contends that Defendant knew that his business was subject to the Workers' Compensation Act, and that Defendant could have afforded the required insurance.

Several decisions support Plaintiff's argument. *See Strauss v. Zielinkski (In re Strauss)*, 99 B.R. 396, 400 (D.C.N.D.Ill. 1989) (An employer may act maliciously if it is foreseeable that an employee will be injured and that failure to obtain workers' compensation coverage will injure the employee's statutory right to insurance benefits); *Vig v. Erickson (In re Erickson)*, 89 B.R. 850, 853 (Bankr.D.Idaho 1988) (Intentional failure to provide workers' compensation insurance warrants a finding of nondischargeability); *Juliano v. Holmes (In re Holmes)*, 53 B.R. 268, 270 (Bankr.W.D.Pa. 1985) (Knowing and intentional failure to carry workman's compensation insurance is a willful act. It is done with the intention of injuring an employee who would suffer loss thereby. Because this result is foreseeable, the act is malicious).

Other courts, however, discharge the debt primarily because the employer's failure to obtain insurance coverage does not necessarily cause financial injury because the employee may never suffer physical injury. These courts conclude that the employer has been negligent at most. *See Denehy v. Zalowski (In re Zalowski)*, 107 B.R. 431 (Bankr.D.Mass.1989) (Failure to provide coverage does not necessarily lead to either physical or financial injury because it is likely that the employee will not suffer a compensable injury); *Aldridge v. Scott (In re Scott)*, 13 B.R. 25, 26–27 (Bankr.C.D.Ill.1981) (Failure to provide workers' compensation coverage produced only the potential for harm. Acts producing potential for harm are negligent but not willful and malicious unless the harm will inevitably follow the wrongful act).

In considering dischargeability issues, courts have differed on whether the focus under section 523(a)(6) should be on the intent to produce the injury or on the intent to perform the act which gives rise to the injury. *See Cassidy v. Minihan*, 794 F.2d 340, 343–44 (8th Cir.1986) (It is the injury to the creditor that must have been intentional, not the act of the debtor which caused the injury); *Farmers Insurance Group v. Compos (In re Compos)*, 768

*Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1560–61, 16 L.Ed.2d 642 (1966) (When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose).

**8.** Ch. 7 Case No. 81–50758, Adv. No. 81–5214 (Bankr.M.D.Ga. June 30, 1982).

F.2d 1155, 1158 (10th Cir.1985) (Section 523(a)(6) does not except from discharge intentional acts which cause injury; it requires instead an intentional or deliberate injury).

*Contra Impulsora Del Territorio Sur, S.A. v. Cecchini (In re Cecchini )*, 780 F.2d 1440, 1442–43 (9th Cir.1986) (Willful and malicious refers to a wrongful, intentional act which necessarily causes injury even absent proof of a specific intent to injure); *Moraes v. Adams (In re Adams )*, 761 F.2d 1422, 1427 n. 5 (9th Cir.1985) (Proof that debtor had knowledge of the probable consequences of his voluntary act is not necessary in order to show willfulness and malice); *In re Erickson,* 89 B.R. at 852 (The focus is not on the intent to produce the injury but on the intent to perform the act which gives rise to the injury).

In *State Farm Mutual Automobile Insurance Co. v. Fielder (In re Fielder )*,[9] the United States Court of Appeals for the Eleventh Circuit focused on the acts of the debtor rather than on the debtor's intent to produce the injury. The court stated:

> The consumption of twelve beers followed immediately by the driving of a vehicle on the public highways is, in this court's view, a malicious and wanton act and one in which the result can be predicted. Fielder's blood test here showed .208 per cent alcohol. A debt directly resulting from driving while so intoxicated is not dischargeable under § 523(a)(6).

799 F.2d at 661.

The Court notes, however, that driving while intoxicated is the cause of the injury suffered in drunk driving cases. *See In re Fielder,* 799 F.2d at 659 (quoting *Long v. Greenwell (In re Greenwell )*, 21 B.R. 419, 421 (D.C.S.D. Ohio 1982) (Defendant's in-

tentional drinking unleashed the unbroken causative chain which led to the injury to plaintiff's vehicle). In the case at bar, however, Defendant's failure to obtain insurance coverage did not unleash an unbroken causative chain which led to Plaintiff's physical injury. An act independent from the failure to obtain insurance had to occur before Plaintiff suffered a loss.

The Court is mindful that section 523 of the Bankruptcy Code is to be strictly construed. The plain language of section 523(a)(6) says "willful and malicious injury." It does not say "willful and malicious act which causes an injury." The Court notes that in 1984 Congress created a new subsection to section 523 which focuses upon the act which produces the injury rather than upon the intent to produce the injury.[10] If Congress had intended to expand section 523(a)(6), it could have simply amended the section rather than creating a new section 523(a)(9). *See Cassidy v. Minihan,* 794 F.2d at 344. Congress has thus far not deemed the type of debt owed Plaintiff by Defendant to be nondischargeable under section 523(a).

An order in accordance with this memorandum opinion will be entered this date.

---

9. 799 F.2d 656 (11th Cir.1986).

10. *See* 11 U.S.C.A. § 523(a)(9) (West Supp.1989). This section provides:
  (a) A discharge under section 727, 1141[,] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
   . . . .
   (9) to any entity, to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred; or
11 U.S.C.A. § 523(a)(9) (West Supp.1989).